NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0051n.06

Case No. 16-2745

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Jan 25, 2018

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| MICHAEL JEROME HENRY, | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

BEFORE: CLAY and SUTTON, Circuit Judges, and WATSON, District Judge.[*]

SUTTON, Circuit Judge. A jury convicted Michael Jerome Henry of robbing several banks and using a firearm in the process. In his first appeal, we reversed two of the firearm convictions because the district court did not instruct the jury properly—in truth because a Supreme Court decision after the trial required a different instruction. *See Rosemond v. United States*, 134 S. Ct. 1240 (2014). On remand, the jury convicted him again on the relevant counts. Because the prosecution submitted evidence sufficient to support the convictions and because the statute defining "crime of violence" is not unconstitutionally vague, we affirm both convictions. But in light of yet another intervening Supreme Court decision, *see Dean v. United States*, 137 S. Ct. 1170 (2017), we must remand for the limited purpose of resentencing him in light of *Dean*.

---

[*] The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

I.

At about 10:30 AM on September 22, 2009, Henry and a cohort entered a Chase Bank branch in Ypsilanti, Michigan. Each wore a mask, hood, gloves, and several layers of clothing. The unknown compatriot, armed with a handgun, stood watch while Henry, equipped with a BB gun, leapt on the counter to collect the cash. About a minute later, they left with $4,382, shedding clothes and gear during their escape.

At about 9:30 AM on November 5, 2009, Henry and an unknown partner did the same thing at a Bank of America in Ann Arbor, Michigan. Both covered their faces and wore gloves. The partner again stood watch with the pistol in hand while Henry leapt on the counter to grab the money. They left with $23,179. And they again left a trail of clothes and gear as they fled.

At 10:12 AM on October 21, 2010, Henry and an unknown partner targeted the same Ann Arbor Bank of America. They arrived with masks, gloves, and layers of clothes. One stood watch with a rifle, which he fired several times. The other leapt the counter and took $11,966. They took off after 41 seconds, again shedding clothes and gear along the way.

Police arrested Henry, who confessed to the first two robberies but denied any involvement in the third. A grand jury indicted him for three counts of bank robbery. *See* 18 U.S.C. § 2113. Each robbery charge came with a federal firearms charge. *See id.* § 924(c)(1). Henry pleaded not guilty, but a jury convicted him on all six counts.

Henry appealed the firearms conviction arising from the second robbery and the robbery and firearms convictions arising from the third robbery. We affirmed his bank robbery conviction. *United States v. Henry*, 797 F.3d 371, 374–77 (6th Cir. 2015). But we reversed the firearm convictions predicated on his second and third robberies because the district court did not

instruct the jury that Henry had to have "advance knowledge" that a real firearm would be used in connection with each robbery. *Rosemond*, 134 S. Ct. at 1243.

On remand, a properly instructed jury convicted Henry on both § 924(c) charges. The presentence report recommended a Guidelines range of 70 to 87 months for the three federal bank robbery charges. It noted that his first conviction under § 924(c) came with a mandatory minimum sentence of 60 months, while his second and third convictions came with mandatory minimum sentences of 300 months apiece. The report noted that the statute required Henry to serve all three firearms sentences consecutively. 18 U.S.C. § 924(c)(1)(A)(i), (C)(i), (D)(ii). All told, the report recommended a Guidelines range of 730 to 747 months. After adopting the recommended Guidelines range and reviewing the relevant sentencing factors, the district court sentenced Henry to 738 months in prison.

Henry challenges his convictions and sentence on several grounds.

II.

*Sufficiency of the Evidence*. Henry first argues that the evidence did not support his firearms convictions for the second and third robberies, claiming he did not know that his partner would use a real weapon during the robberies. We disagree.

A person violates § 924(c) if he possesses a firearm "during and in relation to any crime of violence" or "in furtherance of any such crime." 18 U.S.C. § 924(c)(1)(A). To convict Henry of aiding and abetting that crime, the jury had to find that he had "advance knowledge" that his accomplice would bring a firearm. *Rosemond*, 134 S. Ct. at 1252. In challenging the evidence of advance knowledge, Henry faces a tough road. We must view the evidence in the light most favorable to the prosecution, and he must show that no "rational trier of fact could have found the essential elements of the crime." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

3

Ample evidence showed that Henry knew in advance that his cohort would use a firearm during each robbery. Henry never acted surprised or dismayed when his partner brandished a gun. Still-frames taken from Bank of America's surveillance cameras during the second robbery show Henry walk past his firearm-brandishing accomplice, vault the bank counter, and seize the cash. Witness testimony confirms that Henry carried out the third robbery much the same way. There is no indication that Henry balked after his partner drew a firearm. And there is little reason for doubt that Henry knew the firearm used during each robbery was real. He confessed that he recognized the gun used in the second robbery was the same one used in the first, which he knew was real. Meanwhile, the robber carrying the rifle during the third robbery proved its authenticity by periodically firing it. The jury could "permissibly infer from [Henry's] failure to object or withdraw" after his accomplice brandished the firearm that Henry knew about the gun beforehand. *Rosemond*, 134 S. Ct. at 1250 n.9.

In addition, all three of the robberies followed the same pattern, suggesting that each part of the plan, including his partner's use of a real gun, was preconceived. Each participant wore gloves, masks, and layers of clothing. Each played a specific role: guard or cash collector. While the former controlled the crowd, the latter leapt on top of the counter to collect the money. And each robbery lasted less than a minute. A jury reasonably could infer that the participants executed each robbery so efficiently because they knew the plans inside and out, including the role of the gun brandished by Henry's accomplice. *See United States v. Akiti*, 701 F.3d 883, 887 (8th Cir. 2012).

At some point, a jury is permitted to infer that what happened was not a random event or a coincidence but an intended pattern. Because all three robberies followed the same blueprint, the jury could infer that Henry and his partner had a standard method for each heist. Henry

admitted that he knew that his accomplice brought an actual firearm to the first robbery. And the jury was free to infer that he expected his accomplice to use a firearm during the next two robberies when everything else about the robberies followed the same mode of operation.

Henry counters that several cases undermine this conclusion. He is right about one thing: The cases reverse convictions on sufficiency grounds. But after that, the comparisons break down. For example, in *Brown v. Palmer*, 441 F.3d 347 (6th Cir. 2006), we reversed an aiding-and-abetting conviction because the evidence showed little more than the defendant's presence at the scene. *Id.* at 350–53. But here, the evidence shows that Henry prepared for and participated in the execution of the predicate robberies. He was not a bystander or a bit player caught up in a sudden expansion of the scope of a crime. In *Newman v. Metrish*, 543 F.3d 793 (6th Cir. 2008), we decided that the circumstantial evidence drawn from the weeks before and days after a crime did not prove that the defendant committed the murder. *Id.* at 796–97. But there is no doubt that Henry committed three robberies. The only question is whether he knew that his accomplice would bring a gun, an inference that the record supports. *Newman* has nothing to teach on that score.

Henry adds that the robberies were sufficiently distinct to refute the inference that Henry and his partner followed a standard operating procedure. Each robbery, he points out, involved a different type of firearm. But not every precise feature of the robberies had to be the same. What mattered was that in the main they revealed a standard procedure for robbing banks that involved using a firearm. The jury was free to infer that Henry knew that procedure by the time he participated in the second and third robberies and thus knew a real gun would be used.

*Void for Vagueness*. Henry argues that the firearm statute's residual clause is unconstitutionally vague, invoking *Johnson v. United States*, 135 S. Ct. 2551 (2015). The statute

5

defines a predicate "crime of violence" as a felony that either "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 924(c)(3)(A) (the elements clause), or "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," *id.* § 924(c)(3)(B) (the residual clause). Henry argues that, if § 924(e)(2)(B) is unconstitutional under *Johnson*, then § 924(c)(3)(B) must be invalid too.

We rejected the same argument in *United States v. Taylor*. There too, the defendant challenged the statute as void for vagueness after *Johnson*. But there too, we reasoned that § 924(c)(3)(B) "is considerably narrower than the statute invalidated by the Court in *Johnson*" and upheld the statute. 814 F.3d 340, 375 (6th Cir. 2016). Unlike § 924(e)(2)(B), the statute at issue in *Johnson*, § 924(c)(3)(B) requires (i) that the risk involve physical *force* rather than physical *injury*, (ii) that the risk of force arise "in the course of" the crime, and (iii) that the felony "by its nature" involve the risk that the offender will use physical force. *Id.* at 376–77. Section 924(c)(3)(B) remains constitutional under circuit law.

Even if that were not the case, even if this residual clause were unconstitutional, we would not have to rely on it to find that Henry's predicate crimes count as crimes of violence. All three of the firearm convictions grew out of federal bank robbery convictions under 18 U.S.C. § 2113(a). A necessary element of bank robbery is the use of "force and violence" or "intimidation." 18 U.S.C. § 2113(a). And intimidation is all it takes to satisfy § 924(c)(3)(A)'s elements clause, which defines crimes involving the "threatened use of physical force" as crimes of violence. *See United States v. McBride*, 826 F.3d 293, 296 (6th Cir. 2016) (construing identical language in U.S.S.G. § 4B1.2(a)(1)).

*Sentence.* While Henry's second appeal was pending, the Supreme Court decided *Dean v. United States*, 137 S. Ct. 1170 (2017). The Court held that a district court was permitted to consider, but not required to consider, the mandatory minimum sentences imposed by § 924(c) when deciding whether to depart from the Guidelines sentence for the predicate crimes. *Id.* at 1177–78. *Dean* abrogated *United States v. Franklin*, 499 F.3d 578, 586 (6th Cir. 2007), which had required district courts to ignore § 924(c) when sentencing the offender for the predicate crimes. *Id.* We recently sent back a similar case for resentencing, *see United States v. Person*, No. 16-4031, 2017 WL 5191864, at *4–5 (6th Cir. Nov. 9, 2017), and see no reason not to do the same thing here. We thus must remand the case for the limited purpose of resentencing him and allowing the district court to consider the mandatory minimum sentences applicable to him.

That said, we take the time to reject Henry's three remaining sentencing arguments. First, he cites *United States v. Payton*, 754 F.3d 375 (6th Cir. 2014), for the proposition that the district court should have considered the advanced age at which he would be released before sentencing him. We see two problems. To start, the *Payton* district court imposed a sentence that exceeded the Guidelines range by over twenty years and had a special responsibility to explain why. *Id.* at 377–79. Not so in Henry's case, where his sentence fell comfortably within the range. To finish, we can infer from the record that the district court knew about and considered his age when deciding the risk he posed to public safety. Before the sentencing, defense counsel drew attention to the fact that Henry would "be in excess of 85 years old before he's eligible for release." R. 132 at 6. And the court noted his "current age" and discussed how he would likely backslide into crime if released "relatively early." R. 132 at 10–11. No error lurks here.

Next, Henry challenges the district court's interpretation of the firearms statute. Pointing to its legislative history, he argues that a "second or subsequent conviction" triggering § 924(c)'s consecutive 25-year mandatory minimums cannot arise from the same indictment as the first conviction. But (as he points out) the Supreme Court has held otherwise. *Deal v. United States*, 508 U.S. 129 (1993).

Finally, he argues that the Sixth Amendment requires the prosecution to prove to a jury the existence of prior convictions triggering § 924(c)'s mandatory minimums. Again, binding precedent forecloses the argument. In *Apprendi v. New Jersey*, the Court specifically carved out an exception to the rule for prior convictions. 530 U.S. 466, 490 (2000). The Supreme Court's more recent decisions have not held otherwise. *See United States v. Mack*, 729 F.3d 594, 609 (6th Cir. 2013) (citing *Alleyne v. United States*, 133 S. Ct. 2151, 2160 n.1 (2013)). The district court committed no error.

For these reasons, we affirm Henry's convictions but remand for the limited purpose of resentencing Henry in light of *Dean.*