**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0384n.06

**No. 18-3775**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 29, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| Plaintiff-Appellee, | | |
| v. | | |
| MICHAEL SHEFFEY, | | |
| Defendant-Appellant. | | |

**BEFORE: SILER, GIBBONS, and LARSEN, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** After being charged with multiple federal drug offenses, Michael Sheffey entered into a written plea agreement in which he pled guilty to possessing a controlled substance with the intent to distribute. Based on the plea agreement, the parties believed Sheffey's base offense level was fourteen. Accordingly, the parties anticipated a Guidelines range of thirty to thirty-seven months' imprisonment. The Probation Office, however, recommended that Sheffey be designated as a career offender based on prior convictions for heroin trafficking and aggravated robbery. With the career offender designation, the Probation Office recommended a Guidelines range of 151 to 188 months in prison.

Sheffey now argues that the career offender enhancement was inappropriate because the state statute under which he was convicted of heroin trafficking, Ohio Rev. Code § 2925.03(A)(2),

is categorically overbroad. We conclude that the district court did not err in applying the career-offender enhancement and affirm the judgment.

I.

After an individual overdosed on heroin and identified Michael Sheffey as his supplier, a confidential informant purchased controlled substances from Sheffey at his home in Ashtabula, Ohio. A grand jury then charged Sheffey with violations of 21 U.S.C. § 841(a)(1) and (b)(1)(C) for distributing methamphetamine (Count One), distributing heroin (Count Two), and for possessing those drugs and cocaine with the intent to distribute (Count Three), as well as being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Four). Sheffey subsequently pled guilty to possession of a controlled substance with intent to distribute (Count Three) in a written plea agreement.

In that plea, Sheffey and the government agreed that his base offense level would be fourteen for his offense under 21 U.S.C. § 841(a)(1) and U.S.S.G. § 2D1.1(c)(13), because the offense involved 3.81 grams of cocaine base, 2.23 grams of fentanyl, and 2.62 grams of cocaine hydrochloride. The government agreed to dismiss Counts One, Two, and Four. Though Sheffey waived many of the bases of appeal and post-conviction attack, he explicitly reserved the right to appeal "any sentence to the extent it exceeds the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in this agreement[.]" DE 17, Plea Agreement, PageID 59.

At the change of plea hearing, the court determined that, based on Sheffey's stipulated offense level of fourteen, the estimated Guidelines range would be thirty to thirty-seven months' imprisonment. The written plea agreement, however, stipulated that "Defendant understands that the advisory guidelines range will be determined by the Court at the time of sentencing, after a

presentence report has been prepared by the U.S. Probation Office and reviewed by the parties"

and that Sheffey understood that the parties' recommendations were in no way binding on the

court. DE 17, Plea Agreement, PageID 57. After verifying the factual basis and ensuring that

Sheffey understood the rights he was waiving by pleading guilty, the court accepted his guilty plea.

In its Presentence Investigation Report, the Probation Office found that Sheffey was over

the age of eighteen, had pled guilty to a drug trafficking offense in the instant case, and had

qualifying prior felony convictions:[1] first, Sheffey was convicted after a jury trial of two counts

of aggravated robbery, only one of which can be counted for the career-offender enhancement,

under Ohio Rev. Code § 2911.01(A)(1); second, Sheffey pled guilty to trafficking in heroin under

Ohio Rev. Code § 2925.03(A)(2) in 2015, in return for which the court dismissed charges for

trafficking in cocaine, trafficking in marijuana, and possession of criminal tools. "[T]he *Shepard*

documents from Mr. Sheffey's Ohio drug trafficking case indicate that he was charged with

trafficking in heroin." CA6 R. 18, Appellant Br., at 29. Therefore, the Probation Office

determined that Sheffey qualified as a career offender. Based on Sheffey's career-offender status,

his offense level increased to twenty-nine, after a deduction for acceptance of responsibility. The

corresponding Guidelines range increased to 151 to 188 months' imprisonment.

The parties filed motions regarding the presentence report. The government asked that the

district court continue the sentencing in order to allow Sheffey time to consider how to respond to

the presentence report and hold a hearing to determine whether Sheffey wished to withdraw his

guilty plea, due to his increased potential sentence as a career offender. Sheffey filed a

memorandum in which he requested that the court apply the guidelines range stipulated in the plea

---

[1] Most of Sheffey's previous convictions, including robbery, probation violence, aggravated robbery, sex with a minor, and additional convictions of trafficking heroin, are not at issue in this appeal, though the district court considered them when determining the potential deterrent effect of a lengthier prison sentence.

agreement, instead of the career offender enhancement. Sheffey did not specifically claim that his drug trafficking conviction was not a controlled substance offense. Instead, he requested that the court honor the terms of the plea agreement and not apply the career offender enhancement.

At his sentencing hearing, Sheffey's defense counsel stated that he had no objections to the presentence report. The district court consequently found that Sheffey qualified as a career offender. The court provided Sheffey an opportunity to withdraw his guilty plea, explaining, "If you want to withdraw your guilty plea and go to trial, I'll let you do it. You need leave of the Court. I'll give you leave." DE 40, Sentencing Tr., PageID 199-200. Sheffey declined to change his plea and wished to proceed with sentencing.

Defense counsel found the district court's calculations to be correct and explained that there was no objection to the calculations "or anything else in the report." *Id.* at 200-01. Although counsel took issue with the possible sentence, he explained that Sheffey had not anticipated the career offender finding, because he had entered into the plea agreement that did not contemplate a career offender enhancement. Counsel argued that the court "shouldn't consider" the career offender enhancement "at all" and should impose the agreed-upon Guidelines range but made no argument concerning whether Sheffey was in fact a career offender.

Consequently, the district court found that Sheffey was a career offender and imposed a sentence of seventy-three months' imprisonment. In explaining the sentence, which is above Sheffey's anticipated guidelines range, but below the guidelines range for a career offender, the court said, "because of the plea agreement, I'm not going to go with a sentence of 151 to 188 months. So I'm going to do what I've done sometimes in the past and give you a sentence that's sort of in the middle between straight guidelines and career offender. . . . I'm going to give you

the midpoint of that range[.]." (*Id.* at 211.) At that point, defense counsel objected to the career offender designation.

When the district court asked why defense counsel initially agreed with the findings of the presentence report, but now objected, defense counsel once again agreed that the presentence report was correct. Sheffey subsequently independently objected to the career offender designation, but only "as far as the aggravated robbery," arguing that the previous aggravated robbery conviction was not a crime of violence under the residual clause. *Id.* at 214, 219. When asked whether the aggravated robbery should apply, defense counsel said nothing. After a discussion concerning whether aggravated robbery was a qualifying offense and determining that it was a crime of violence under the use-of-force or "elements" clause, the court overruled the objection. At no point did Sheffey or his counsel object to the career offender enhancement based on his heroin trafficking conviction or argue that heroin trafficking was not a controlled substance offense.

On appeal, Sheffey has conceded that his Ohio aggravated robbery conviction qualifies as a crime of violence for purposes of the career offender guideline. Sheffey now argues that the Ohio drug trafficking statute is categorically overbroad because it criminalizes the trafficking of controlled substances that are not illegal under federal law.

II.

Under the Sentencing Guidelines, a defendant, who is at least eighteen-years-old and is being sentenced for a crime of violence or controlled substance offense, is deemed a "career offender" if he has "at least two prior felony convictions of either a crime of violence or a controlled substances offense." U.S.S.G. § 4B1.1(a). This case presents the question as to whether a violation of a state's controlled-substances statute constitutes a "controlled substance offense"

for purposes of the career offender sentencing enhancement. Because the record below contains conflicting evidence about whether Sheffey preserved his argument against his career offender enhancement, we first address waiver and the appropriate standard of review before considering the merits of Sheffey's argument.

A.

The government argues that Sheffey has waived the argument that the career offender enhancement should not apply. "A defendant waives the argument that a sentencing enhancement does not apply by '*explicitly* agreeing' that it does, such as through 'plain, positive concurrence.'" *United States v. McBride*, 826 F.3d 293, 294–95 (6th Cir. 2016) (emphasis added) (quoting *United States v. Knox*, 593 F. App'x 536, 536, 537 (6th Cir. 2015)). Accordingly, we have concluded that a defendant waived a challenge to his sentence where he "conceded in his sentencing memorandum that" the enhancement applied, *United States v. Brown*, 727 F. App'x 126, 129 (6th Cir. 2018), where "his counsel expressly agreed to the court's proposed" course of action in a sentencing hearing, *United States v. Benchick*, 725 F. App'x 361, 370 (6th Cir. 2018), or where a defendant expressed an "understanding" that an enhancement will apply as part of his plea agreement, *McBride*, 826 F.3d at 294.

While there is substantial indication that Sheffey's attorney believed Sheffey qualified for the career-offender enhancement, the record contains some equivocation, weighing against finding an explicit agreement. In his sentencing memorandum, Sheffey objected to the career offender enhancement. In the introduction to Sheffey's sentencing memorandum, counsel merely "requests this Court to honor the terms of [Sheffey's] plea agreement and use its discretion to not apply the career offender enhancement," elsewhere it "requests this Honorable Court to determine that [Sheffey] is not a career offender." DE 22, Def. Sentencing Mem., PageID 125, 133. This

memorandum was filed in response to the presentence report, which informed the parties that "[o]bjections to the report [we]re due to the Probation office within 14 days of th[e] filing." Docket, 1:17-cr-00321-DAP-1, DE 18, First Disclosure of Presentence Report. Moreover, the Final Presentence Report specifically notes that "[t]he defendant submitted objections to the adjustment for the possession of the firearm and the career offender enhancement." DE 19, Final Presentence Rep., at 26.

The sentencing hearing also lacks an explicit agreement that Sheffey qualified for the career-offender enhancement. During the sentencing hearing, Sheffey's attorney objected to the district court's finding that the career-offender enhancement applied. Sheffey's attorney explained that the objection was not to the district court's determination that Sheffey was a career offender, but to the district court's decision to impose enhancement. However, upon hearing his attorney concede that he qualified for the career-offender enhancement, Sheffey independently objected, arguing that he did not qualify for the enhancement.

We have previously held that a defendant waived his challenge to his career-offender enhancement where his attorney requested that the district court decline to apply the enhancement but nevertheless conceded that the district court was correct to conclude that the defendant qualified for the enhancement. *Knox*, 593 F. App'x at 536–37. The defendant in *Knox*, however, did not object himself after his attorney conceded that he qualified as a career offender. Indeed, "[n]either side objected to the sentence." *Id.* at 537. Sheffey's somewhat unusual step of personally objecting during sentencing distinguishes his case from *Knox*.

Therefore, Sheffey and the government filed memoranda in response to the court's request that the parties brief the issue of whether the two prior convictions are predicate offenses. And Sheffey himself independently raised the argument that the career offender enhancement should

not apply at his sentencing hearing. While it would be permissible to find waiver on this record, we proceed to consider whether the career offender objection was otherwise properly preserved. *See, e.g.*, *Turner v. United States*, 885 F.3d 949, 954 (6th Cir. 2018) (*en banc*) (exercising discretion to consider an argument that may have been waived because it was purely an issue of law that required no new factual determination and was fully briefed).

B.

Generally, this court reviews *de novo* a district court's determination that a prior conviction qualifies for career offender status under U.S.S.G. § 4B1.1. *United States v. Wynn*, 579 F.3d 567, 570 (6th Cir. 2009). Under *United States v. Bostic*, district courts are required to ask, after announcing the proposed sentence, whether any parties have objections to the sentence that they have not previously raised. 371 F.3d 865, 872–73 (6th Cir. 2004). A party who fails "to make an objection, even after being given 'an opportunity' to do so, forfeits the argument and may obtain relief on appeal only if the error is 'plain' and 'affects substantial rights.'" *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (*en banc*) (quoting Fed. R. Crim. P. 52(b)).

When the court asked if the calculations, including the career offender increase, were correct, however, defense counsel said "[w]e would object to this Court's finding of the career criminal offender at this time." DE 40, Sentencing Tr., PageID 214. When the court sought to clarify the counsel's objection, counsel once again conceded "this Court is correct." *Id.* When defense counsel finally did object, it was not to challenge the career offender enhancement. Rather, defense counsel requested that the district court disregard the career offender provision and follow the parties' stipulated guidelines range as stated in the plea agreement. Thus, we would typically review under a plain error standard because counsel did not properly preserve the issue of whether the career offender enhancement in fact applies.

Ultimately, we need not dwell too deeply on the issue because the government contends that the district court committed no error and, even under *de novo* review, Sheffey's argument fails. *See United States v. Sharp*, 689 F.3d 616, 618 (6th Cir. 2012) (reviewing *de novo* a likely-forfeited issue). Accordingly, we elect to consider the argument on the merits.

C.

The Sentencing Guidelines provide a more severe sentence if the defendant is classified as a "career offender." That enhancement applies if (1) the defendant was at least eighteen years of age when he committed the offense of conviction; (2) the offense of conviction is a crime of violence or a controlled substance offense; and (3) "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Sheffey has conceded that a prior conviction for aggravated robbery qualifies as a predicate violent felony offense. Therefore, whether he was properly identified as a career offender depends on whether prior heroin trafficking convictions in Ohio qualify as prior controlled substance offenses.

The Guidelines define a "controlled substance offense" as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). Sheffey argues that the career offender guideline limits the relevant controlled substances to those defined by federal law under 21 U.S.C. § 802(6). That section defines a "controlled substance" as "a drug or other substance, or immediate precursor, included

in schedule I, II, III, IV, or V of part B of th[at] subchapter." 21 U.S.C. § 802(6). *See also* 21 C.F.R. § 1308.11–.15 (providing a list of controlled substances under those schedules).

> Ohio's drug trafficking statute provides, in relevant part, that no person shall:

> Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or controlled substance analog is intended for sale or resale by the offender or another person.

Ohio Rev. Code § 2925.03(A)(2). In turn, Ohio defines a controlled substance as a "drug, compound, mixture, preparation or substance included in schedule I, II, III, IV, or V." Ohio Rev. Code § 3719.01(C). The specific controlled substances in each schedule are provided in a list in Ohio Rev. Code § 3719.41.

Ohio law criminalizes controlled substances that are not considered controlled substances under federal law. Because the Ohio and federal laws provide different lists of what is considered an illegal drug, Sheffey argues that "the Ohio drug trafficking statute is overbroad as it criminalizes the trafficking of controlled substances that are not illegal under federal law." CA6 R. 18, Appellant Br., at 24.

When determining whether a state conviction qualifies as a prior controlled substance offense, the court "applies a categorical approach, looking to the statutory definition of the offense and not the particular facts underlying the conviction." *United States v. Evans*, 699 F.3d 858, 862 (6th Cir. 2012) (citation and internal quotation marks omitted). The elements of the prior state offense are compared to the elements of a "controlled substance" offense as included in the Guidelines. *United States v. Woodruff*, 735 F.3d 445, 449 (6th Cir. 2013) (citing *James v. United States*, 550 U.S. 192, 202 (2007)).

Recently, the Sixth Circuit considered a factually analogous case. The defendant in *United States v. Smith* made the exact argument Sheffey makes here, that "because the list of controlled

substances criminalized under [the state] law includes a substance that is not prohibited under federal law, his prior convictions [could not] serve as predicate controlled-substance offenses." *United States v. Smith*, 681 F. App'x 483, 488 (6th Cir. 2017), *cert. denied*, ___ U.S. ___, 137 S.Ct. 2144 (2017). The panel found that violation of the relevant Illinois statute was a predicate offense for purposes of the career offender enhancement "[b]ecause there is no requirement that the particular controlled substance underlying a state conviction also be controlled by the federal government, and because the Guidelines specifically include offenses under state law in § 4B1.2[.]" *Id.* at 489. *See also United States v. Whitfield*, 726 F. App'x 373, 376 (6th Cir. 2018) (adopting *Smith*'s reasoning because "[i]n crafting the federal sentencing Guidelines and substantive federal criminal laws, Congress was well aware of the significant variations that existed in state criminal law").

The *Smith* opinion, however, added to a split among the circuits concerning whether the career offender enhancement's reference to "controlled substance" is defined exclusively by federal law and the Controlled Substances Act. *See, e.g.*, *United States v. Townsend*, 897 F.3d 66, 71 (2d Cir. 2018) (finding that the Sentencing Guidelines' reference to "controlled substance" in § 4B1.2(b) referred exclusively to substance controlled by the Controlled Substances Act); *United States v. Leal-Vega*, 680 F.3d 1160, 1166–67 (9th Cir. 2012) (holding that California's possession of a controlled substance for sale statute was "categorically broader than the Guidelines definition of 'drug trafficking offense' because it criminalizes possession or purchase of certain substances that are not covered by the [Controlled Substances Act]" and therefore was not a drug trafficking offense under the Guidelines); *United States v. Sanchez-Garcia*, 642 F.3d 658, 661–62 (8th Cir. 2011) (finding the California's possession with intent to distribute statute was categorically overinclusive, because it criminalized conduct that did not trigger an enhancement). *But see*

*United States v. Walker*, 858 F.3d 196, 200 n.4, 201 (4th Cir. 2017) (finding that defendant's "prior conviction under Ohio Rev. Code § 2925.03(A)(2) categorically qualifies as a 'drug trafficking offense' as defined in U.S.S.G. § 2L1.2," which is analogous to the definition of "controlled substance offense" at issue in this case).

To argue that Ohio's statute is overbroad, Sheffey relies on several immigration cases that address what constitutes a "controlled substance" for purposes of removal. (CA6 R. 18, Appellant Br., at 24–26) (citing *Mellouli v. Lynch*, 135 S.Ct. 1980 (2015); *Vera-Valdevinos v. Lynch*, 649 F. App'x 597 (9th Cir. 2016)). These cases are easily distinguishable, however. Under 8 U.S.C. § 1227(a)(2)(B)(i), an alien is subject to removal if he is convicted of a violation "relating to a controlled substance (as defined in section 802 of Title 21)[.]" Unlike that statutory section, the career offender enhancement at issue in this case does not limit its definition of controlled substance offense to specific federal violations, instead including "any offense under federal *or state* law, punishable by imprisonment for a term exceeding one year[.]" U.S.S.G. § 4B1.2(b) (emphasis added).

There is "no requirement that the particular controlled substance underlying a state conviction also be controlled by the federal government[.]" *Smith*, 681 F. App'x at 489. "[T]he fact that [a state] may have criminalized the 'manufacture, import, export, distribution, or dispensing' of some substances that are not criminalized under federal law does not prevent conduct prohibited under the [state] statute from qualifying, categorically, as a predicate offense." *Id.* We therefore decline to adopt the reasoning embraced by our sister circuits. Like the other panels in our circuit that have considered the issue before us, however, we elect to continue with the modified categorical approach below and find that the Ohio statute is divisible.

D.

Even if a statute is overbroad, it may still be divisible such that the specific offense at issue in this case, trafficking in heroin, qualifies as a controlled substance offense. Under the modified categorical approach, we may look to "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information" in order to determine whether the offense for which the defendant was previously convicted would qualify as a controlled substance offense federally. *Shepard v. United States*, 544 U.S. 13, 26 (2005). Although *Shepard* addressed classifications of a prior conviction for purposes of the Armed Career Criminal Act, the approach is applicable in the context of a career offender enhancement. *United States v. Bass*, 274 F. App'x 443, 446 (6th Cir. 2008) (citing *United States v. Foreman*, 463 F.3d 638, 641 (6th Cir. 2006)).

The Ohio Supreme Court has explained that § 2925.03, the drug offense statute at issue in this case, "sets forth more than one criminal offense with the identity of each being determined by the type of controlled substance involved. As such, the type of controlled substance involved constitutes an essential element of the crime which must be included in the indictment." *State v. Headley*, 453 N.E.2d 716, 720 (Ohio 1983). The drug trafficking statute then provides a sentencing structure, with the severity of the sentence based upon the type of drug being distributed. Ohio Rev. Code § 2925.03(C). Therefore, an effective indictment in Ohio must include at least the schedule of the controlled substance being distributed. *State v. Jackson*, 980 N.E.2d 1032, 1035–37 (Ohio 2012).

- 13 -

The Sixth Circuit recently adopted the Ohio Supreme Court's analysis. In *United States v. Solomon*, the defendant entered into a plea agreement in which he agreed with the government that, due to the amount of fentanyl he had trafficked, he would have a base offense level of twenty-four. 763 F. App'x 442, 442–43 (6th Cir. Feb. 13, 2019). The Probation Office subsequently determined that the defendant had two prior state felony convictions, one for domestic violence and the other for selling cocaine in violation of Ohio Rev. Code § 2925.03(A)(1), such that he was a career offender under U.S.S.G. § 4B1.1(a) and would face a base offense level of thirty-four. *Id.* The defendant argued that Ohio's drug trafficking statute was overbroad because "the statute criminalizes possession of drugs that are not controlled substances under federal law." *Id.* at 443. The panel, using the categorical approach, found that Ohio's drug trafficking statute is divisible and that the defendant had been convicted of the distinct offense of "trafficking in cocaine." *Id.* at 448–49. *See also United States v. Williams*, 762 F. App'x 278, 282 (6th Cir. 2019) (avoiding the issue of whether Michigan's controlled substance statute is categorically overbroad and finding that the defendant's felony marijuana conviction "falls squarely within the Guidelines definition of a controlled substance offense"); *United States v. Miles*, 266 F. App'x 534, 536 (9th Cir. 2008) (using the modified categorical approach to determine that Ohio Rev. Code § 2925.03 was a "controlled substance offense" despite not including a mens rea comparable to the federal offense); *United States v. Karam*, 496 F.3d 1157, 1167 (10th Cir. 2007) (finding that "[t]here can be no dispute that" a conviction under Ohio Rev. Code § 2925.03(A)(2) is a controlled substance offense, despite its mens rea requirement seeming broader than the federal offense, because it required the mens rea of intent to distribute).

Just as the defendant in *Solomon* was convicted of selling cocaine, Sheffey was convicted under § 2925.02(A) for "trafficking in heroin." That subsection provides that "[i]f the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of trafficking in heroin." Ohio Rev. Code § 2925.03(C)(6). Just as in *Solomon*, the presentence report indicates that Sheffey was convicted of trafficking in heroin. Sheffey did not object at his sentencing hearing, nor in his briefing, to that characterization of the offense. Because the Ohio drug trafficking statute is divisible and because Sheffey was convicted of trafficking in heroin, which is a federally controlled substance, his prior heroin offense qualifies as a predicate offense for the purposes of his career offender enhancement.

Further, though the Ninth Circuit found that California's possession with intent to distribute statute was categorically overbroad, as addressed above, it still found that the state conviction qualified as a "drug trafficking offense" under the Guidelines using the modified categorical approach. *Leal-Vega*, 680 F.3d at 1162. Similarly, the Eighth Circuit, in interpreting the same California statute, found that application of the enhancement was proper when *Shepard* documents demonstrated that the defendant had pled guilty to possession of methamphetamine with the intent to sell. *Sanchez-Garcia*, 642 F.3d at 662.

Sheffey has never disputed that his previous trafficking offenses involved heroin. Heroin is a Schedule I controlled substance under federal law. 21 U.S.C. § 812. His previous state convictions for trafficking in heroin fall squarely within the Guidelines definition of a "controlled

substance offense." Therefore, even if the panel were to find that the Ohio statute is overbroad, it is divisible and Sheffey's offense qualifies.

* * * * *

"[T]here is no requirement that the particular controlled substance underlying a state conviction also be controlled by the federal government[.]" *Smith*, 681 F. App'x at 489. Further, Ohio's drug-trafficking statute is divisible. Sheffey's previous trafficking offenses, which involved trafficking in heroin, necessarily requires selling or offering to sell a federally-controlled substance. Therefore, Sheffey's previous convictions qualify as predicate offenses. Accordingly, we affirm the judgment of the district court.

LARSEN, Circuit Judge, concurring in the judgment. In the district court, Sheffey lodged a lone objection to the application of the Guidelines' career offender enhancement—that his prior conviction for aggravated robbery in Ohio was not a "crime of violence," and thus could not count as a predicate offense under the Guidelines. *See* U.S.S.G. § 4B1.1(a) (stating that the "career offender" enhancement applies to a defendant with "at least two prior felony convictions of either a crime of violence or a controlled substance offense"). On appeal, Sheffey concedes that this argument is foreclosed by binding precedent, *see United States v. Patterson*, 853 F.3d 298 (6th Cir. 2017), and instead raises a new argument—that his prior Ohio conviction for heroin trafficking under Ohio Revised Code § 2925.03(A)(2), is categorically overbroad, and thus cannot count as a predicate "controlled substance offense" under the Guidelines. Because Sheffey's sole challenge on appeal was not presented below, I would review this question for plain error. *See United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). Sheffey cannot meet that standard. An error is not "plain" "unless the error is clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993). "A 'circuit split precludes a finding of plain error,'" as does "a lack of binding case law" from our circuit. *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) (quoting *United States v. Williams*, 53 F.3d 769, 772 (6th Cir. 1995)). Here, as the majority points out, both conditions obtain. For that reason, I agree that the judgment of the district court should be affirmed.